[Cite as *In re K.S.*, 2014-Ohio-4188.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.S.
      K.S.

C.A. No.     27229


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN-12-7-464
                    DN-12-7-465

DECISION AND JOURNAL ENTRY

Dated: September 24, 2014

HENSAL, Presiding Judge.

{¶1} Appellant, Amanda R. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her four minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the natural mother of two minor children with the initials K.S.: a male born September 27, 2009, and a female born July 7, 2011. Although Mother has two older children who were at issue in the proceedings in the trial court, those children are not parties to this appeal because they remained in CSB's temporary custody with a goal of placing them in the legal custody of a relative or kinship provider.

{¶3} On October 10, 2012, K.S. and K.S. were removed from their home pursuant to Juvenile Rule 6 because Mother and the children's father were manufacturing methamphetamine

there. The complaint further alleged that the children were living in a deplorable home, that the parents required them to stay in their rooms and did not interact with them, and that the parents had not otherwise been meeting their basic needs.

{¶4} The children's father, who is not a party to this appeal, was later convicted of illegal manufacture of drugs and was sentenced to a three-year mandatory term of incarceration. Mother was convicted of lesser charges and, although she was sentenced to two years' incarceration, her sentence was suspended and she was placed on community control.

{¶5} Because both parents stipulated to the truth of the facts alleged in the complaint, K.S. and K.S. were later adjudicated abused and dependent children and placed in the temporary custody of CSB. The reunification goals of the case plan for Mother focused on her addressing her drug problems by submitting to random drug screening, obtaining a chemical dependency assessment, and following any treatment recommendations. Mother was also required to complete parenting classes and obtain and maintain stable housing. Although Mother obtained a chemical dependency assessment, she did not follow up with random drug screening or recommended mental health counseling. Mother eventually completed parenting classes but, as of May 2013, she had not obtained stable housing.

{¶6} CSB moved for permanent custody of both children and Mother alternatively moved for a six-month extension of temporary custody. Following a hearing on the alternate motions, the trial court found that K.S. and K.S. could not be returned to either parent within a reasonable time or should not be returned to them and that permanent custody was in their best interests. Consequently, it terminated parental rights and placed K.S. and K.S. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION TO GRANT [CSB'S] MOTION FOR PERMANENT CUSTODY WHILE DENYING MOTHER'S MOTION FOR A SIX-MONTH EXTENSION IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother's sole assignment of error is that the trial court should have extended temporary custody for another six months rather than granting CSB permanent custody of K.S. and K.S. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Revised Code Section 2151.414(D). *See* Former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶8} The trial court found that the first prong of the permanent custody test had been satisfied as to Mother because K.S. and K.S. could not be returned to either parent within a reasonable time or should not be returned to them based on its factual finding under Revised Code Section 2151.414(E)(1), that Mother had failed to substantially remedy the conditions that caused the children to be placed outside her home. Mother disputes that finding and argues that

---

[1] Section 2151.414(B)(1) was amended effective September 17, 2014.

the evidence demonstrated that she had substantially complied with the requirements of the case plan and that an extension of temporary custody was in the best interests of her children.

{¶9} The trial court's finding that Mother had not substantially remedied the conditions that caused the ongoing removal of her children from the home was relevant to either of these dispositional alternatives because the trial court had authority to extend temporary custody only if it found that Mother had made "significant progress" on the case plan, that an extension was in the best interest of the children, and that there was reasonable cause to believe that the children would be reunified with Mother or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1). We agree with the trial court that CSB demonstrated by clear and convincing evidence that Mother had failed to substantially remedy the conditions that caused the children to be placed outside the home and that permanent custody was in their best interests.

### Case Plan Compliance

{¶10} Although Mother argues that she "substantially if not totally completed all aspects of her case plan[,]" and, therefore, CSB failed to present clear and convincing evidence to support the trial court's finding under Revised Code Section 2151.414(E)(1), the record demonstrates otherwise. Mother's argument focuses only on evidence that she obtained a chemical dependency assessment, completed parenting classes, interacted appropriately with the children during visits, and obtained appropriate housing after CSB moved for permanent custody. Mother had yet to resolve the primary problem addressed by the case plan, however.

{¶11} Specifically, K.S. and K.S. were removed from their home and adjudicated abused and dependent children because their parents manufactured and used illegal drugs in the home, exposing the children to harmful methamphetamine fumes and neglecting their basic needs while they instead focused on their own drug habits. Although Mother was also required

to complete parenting classes and obtain and maintain stable housing, the more fundamental reunification goal of the case plan was for Mother to resolve her drug problems. She was required to obtain a chemical dependency assessment, follow any treatment recommendations, and demonstrate ongoing sobriety through regular, random drug screening.

{¶12} After Mother obtained a chemical dependency assessment, she did not comply with the drug screening component of the case plan, nor did she follow through with the ongoing mental health counseling. Mother began counseling but, after completing a few sessions, she stopped going. She submitted urine samples only nine of the 31 times that were required by the case plan. Although Mother apparently had no vouchers to pay for three of the tests that she missed, she offered the caseworker no explanation for the other 19 scheduled drug tests that she missed. Moreover, of the nine samples that she did submit for drug screening, three tested positive for opiates and/or marijuana. Although Mother had a prescription to explain one of the positive screens for opiates, the opiates were prescribed for pain during a trip to a hospital emergency room after she was assaulted by her then-boyfriend. Mother gave the caseworker no legal justification for the other two positive drug screens.

{¶13} Consequently, there was clear and convincing evidence to support the trial court's conclusion that Mother had failed to substantially remedy the drug problem that caused the ongoing removal of her children from her home. *See* R.C. 2151.414(E)(1). Similarly, that evidence also supported the trial court's conclusion that an extension of temporary custody was not warranted because Mother had failed to make "significant progress" on the reunification goals of the case plan. *See* R.C. 2151.415(D)(1).

**Best Interest**

**{¶14}** CSB also presented clear and convincing evidence to establish that permanent custody was in the best interests of both children. When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider all the relevant factors, including those enumerated in Revised Code Section 2151.414(D): the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

**{¶15}** Because Mother failed to comply with the substance abuse component of the case plan, her interaction with her children throughout this case was limited to weekly visitation that was either supervised or monitored by CSB. Of the 42 weekly visits that were scheduled, Mother attended only 32. During the three months prior to the permanent custody hearing, she did not attend a single visit with K.S. and K.S. When Mother missed visits, she rarely gave advance notice to CSB, leaving the children waiting for her. The caseworker testified that Mother's no shows were upsetting to the older K.S.

**{¶16}** K.S. and K.S. had been living together in the same foster home throughout this case. They were comfortable and had adjusted well to that home. The older K.S. told the caseworker that he "feels safe" there. The younger K.S., who had significant developmental delays when she arrived at the foster home, had been working regularly with an early

intervention specialist since she was placed there. By receiving regular therapy, K.S. had shown "a lot of progress" in the development of her expressive and receptive language.

{¶17} The foster parents were prepared to continue providing the children with a safe and stable environment and were interested in adopting both children if CSB received permanent custody. Throughout this case, the foster parents had also arranged with the caretakers of the children's older half-siblings to maintain a relationship between all four siblings, which they planned to continue.

{¶18} Because K.S. and K.S. were only two and four years old at the time of the permanent custody hearing, the guardian ad litem spoke on their behalf. She gave her opinion that permanent custody, rather than an extension of temporary custody, was in the children's best interests because Mother had not followed through with the conditions of her probation or the reunification requirements of the case plan. Most significantly, she was concerned that Mother had not begun to address the substance abuse or mental health components of the case plan.

{¶19} By the time of the hearing, K.S. and K.S. had spent approximately one year living outside Mother's custody. While they lived in the custody of Mother during the earlier years of their lives, they had been exposed to the dangers of their parents' ongoing manufacturing and use of illegal drugs. In addition to the dangers from their parents' drug use, they lived in a deplorable home; their parents did not regularly interact with them; and their basic needs were not met. The evidence was not disputed that the significant speech delays of the younger K.S., which were eventually discovered when she came into CSB care at the age of 17 months, should have been detected and addressed many months earlier, had she received regular medical care while living with her parents.

{¶20} Because the children had spent much of their young lives in a temporary placement and were in a safe and stable home for the first time in their lives, they were in need of a legally secure permanent placement. This was particularly true for the younger K.S., as her early intervention specialist testified that it was "absolutely important" that she continue to receive consistent therapy to address her developmental delays. Each child was receiving consistent care from the foster parents, who wanted to adopt them if CSB received permanent custody. Because Mother was not prepared to provide them with a stable home and CSB had been unable to find any suitable relative who was willing and able to do so, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by terminating parental rights and placing the children for adoption. Because CSB presented clear and convincing evidence to establish both prongs of the permanent custody test, Mother's assignment of error is overruled.

III.

{¶21} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.